UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ANNETTE SAUNDERS,

       *Plaintiff,*

v.

WAL-MART STORES INC. et al.,

       *Defendants.*

Civil Action No.: 3:17-cv-03051

**MEMORANDUM AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Annette Saunders sued Defendant Wal-Mart Stores East, LP (improperly named as Wal-Mart Stores Inc.) for negligence after she slipped and fell in its Neptune, New Jersey store. Presently before the Court is Defendant's motion for summary judgment. (ECF No. 50). A telephonic hearing was held on March 4, 2021. For the reasons that follow, Defendant's motion is granted.

I.

    On February 13, 2015, Plaintiff shopped at Wal-Mart in Neptune, New Jersey with her friends Toni Willis and Nicole Willis. (Pl. Statement Material Facts ("PSMF") ¶ 1, ECF No. 51; Dep. of Anette Saunders ("Saunders Dep.") 45:22 – 46:3, 54:18-21, Ex. D, ECF No. 50-9).[1] After she shopped for approximately one hour, Plaintiff went to the beverage aisle to look for Gatorade. (PSMF ¶¶ 2-4). On the right side of the aisle, near the Gatorade, were tall stacks of bottled water. (*Id.* ¶¶ 3, 5). The water was packaged in cases of twenty-four or thirty-six bottles and covered with plastic. (*Id.* ¶ 5). The cases were stacked on top of wooden crates, and the stacks were more than five feet tall. (Saunders Dep. 50:4-16).

---

[1] Nicole Willis's maiden name is Nicole Freeman, and she is referred to by that name several times in the record. (*See* Saunders Dep. 55:18 – 56:2). Nicole Willis is the daughter of Toni Willis. (Saunders Dep. 66:7).

1

As she approached the shelves, Plaintiff did not see water on the floor. (*Id.* ¶¶ 4-5). Slipping on the water, Plaintiff grabbed her shopping cart to steady herself, but the cart tipped over and Plaintiff fell on her rear end and her back. (*Id.* ¶ 3; Saunders Dep. 61:5-19). Plaintiff's shopping companions were not with her at the time of the accident, and no one witnessed her fall. (PSMF ¶ 3; Saunders Dep. 54:12-14).

Once on the floor, Plaintiff observed that water was continuously leaking from at least one broken bottle in the packaged water. (PSMF ¶ 6; Saunders Dep. 50:17-21, 59:10-14). She estimated that there was approximately one bucket or half of one bucket of water on the floor, or about the area of eight pieces of notebook paper. (PSMF ¶ 7; Saunders Dep. 53:3 – 54:8). Unable to rise due to pain from the fall, Plaintiff took several pictures of the water on the floor while waiting for assistance. (PSMF ¶¶ 8-9).

Five to ten minutes later, another shopper walked by and inquired into Plaintiff's wellbeing. (*Id.* ¶¶ 8, 10). An employee and manager arrived on the scene, brought a wheelchair for Plaintiff, and called Nicole and Toni on the intercom. (*Id.* ¶ 10). According to Plaintiff, the manager introduced himself as a manager, wheeled her to the front of the store in a wheelchair, asked her questions about her fall, and filled out an incident report on a clipboard, which she signed. (Saunders Dep. 63:18 – 66:4, 72:19 – 73:1). She did not obtain a copy of the incident report or return to the store after the day of the accident. (Saunders Dep. 73:17-24). Plaintiff did not remember the name of the Wal-Mart manager who took the report, but recalled that he was white with light-colored hair, glasses, and some facial hair. (Saunders Dep. 62:5 – 63:17). She testified that he offered to call an ambulance, which she declined. (Saunders Dep. 111:1-5).

Toni and Nicole Willis did not know Plaintiff had fallen until they were called to the front of the store on the intercom. (Dep. of Toni Willis ("Toni Dep.") 16:13-20, Ex. F, ECF No.

50-11). They met Plaintiff – in her wheelchair – near the store entrance and observed a Wal-Mart employee or manager asking Plaintiff questions and preparing a report on a clipboard. (PSMF ¶¶ 10-11; Toni Dep. 16:13 – 17:6, 20:21 – 21:9; Dep. of Nicole Willis ("Nicole Dep.") 12:17 – 13:12, Ex. E, ECF No. 50-10). While Toni did not listen to the full conversation between Plaintiff and the manager, she heard them discuss "something about water on the floor." (Toni Dep. 21:11 – 22:7). Toni and Nicole recalled that the manager and another Wal-Mart employee were white men, and that the manager was middle-aged and wore khaki pants and a button-down dress shirt. (Toni Dep. 18:18 – 19:20; Nicole Dep. 12:10-16, 14:1-7).

As they were leaving the store, Plaintiff told Toni and Nicole that she had slipped and fallen on the floor, and that her back hurt. (Toni Dep. 22:12 – 23:10). Toni and Nicole never discussed the incident in more detail with Plaintiff and did not know what caused her to fall. (Toni Dep. 22:16 – 24:5; Nicole Dep. 15:18 – 16:12).

A few days after her fall, Plaintiff went to the emergency room due to her ongoing back pain, which she rated as an eight on a scale of one to ten. (Saunders Dep. 95:3 – 96:3, 108:11-14). She began receiving medical treatment from a pain and spine specialist in 2015. (Saunders Dep. 88:7-24). Due to her injuries from the accident and the medication she was prescribed, she has lost her range of mobility and can no longer engage in physical activities such as riding her bike, doing yardwork, running, and climbing steps. (Saunders Dep. 112:1-10, 165:12-25). She has incurred approximately $45,000.00 in medical expenses to treat her injuries from the fall. (Pl.'s Resp. to Interrog. ¶ 7, Ex. D, P-1, ECF No. 50-9).

According to Defendant, the Wal-Mart store in question has no record of this incident, and no store personnel have knowledge of Plaintiff's claims. (Def. Statement Undisputed

Material Facts ("DSUMF") ¶ 10, ECF No. 50-2). As such, Defendant disputes whether the accident occurred. (*Id.*; Moving Br. 4, ECF No. 50-4).

In addition to the testimony from Nicole and Toni Willis, Plaintiff has produced the photographs[2] of the water on the floor she took after she fell, and medical reports from the spine and pain center that state she slipped on water and fell on her back while shopping at Wal-Mart. (Saunders Dep. 205:3-15; Personal Injury Review Sheet, Ex. D, P-6, ECF No. 50-9; Visit Notes dated Apr. 22 & 24, 2015, Ex. D, P-7, P-8, ECF No. 50-9; Photographs, Ex. G, ECF No. 50-12, Photograph, Ex. 1, ECF No. 51-3). Defendant has not produced any witnesses to challenge the testimony of Plaintiff, Toni, or Nicole.

II.

In support of its motion, Defendant argues that Plaintiff does not allege what caused the bottles to break, how long the water was on the floor, or whether any Wal-Mart employee had actual or constructive notice or an opportunity to eliminate the hazard. (*Id.* ¶ 9). It also asserts that Plaintiff's photographs do not show displays of water bottles, water on the floor, or any distinguishing features that indicate they were taken at the store in question. (*Id.* ¶ 12). Further, it argues that if the puddle of water were the size described by Plaintiff, it would have been sufficiently open and obvious to relieve Defendant of the duty to warn. (Reply Br. 8-9, ECF No. 52).

III.

### LEGAL STANDARD

A motion for summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] Plaintiff also submitted a digital forensic report for the photographs she took on her Samsung tablet. (*See* Ex. 2, ECF No. 51-4).

56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020), *amended*, 979 F.3d 192 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.*

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Romeo v. Harrah's Atl. City Propco, LLC*, 168 F. Supp. 3d 726, 728 (D.N.J. 2016). Then, the nonmoving party must allege "specific facts showing that there is a genuine issue for trial." *Id.* "The Court must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 255). Moreover, summary judgment "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## LEGAL PRINCIPLES

### A. Premises Liability

In a suit for negligence, a plaintiff must prove (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury. *V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415, 243 (D.N.J. 2020) (citing *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990)). "Failure to establish any one of these elements is grounds for summary judgment." *Id.*

A business owner owes a particular duty of care to its invitees:

> Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation. The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the

>premises in safe condition, and to avoid creating conditions that would render the premises unsafe.

*Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. Sup. Ct. 2003) (citations omitted).

In general, an invitee must prove that the business owner had actual or constructive knowledge of the dangerous condition that caused her injuries. *Id.* "Constructive knowledge refers to notice that a particular condition existed for such a length of time as reasonably to have resulted in knowledge of the condition, had the owner . . . been reasonably diligent." *Romeo*, 168 F. Supp. 3d at 732 (quoting *Kempf v. Target Corp.*, No. 06–1935, 2008 WL 305457, at *2 (D.N.J. Jan. 31, 2008)). "Whether a reasonable opportunity to discover a defect existed will depend on both the character and the duration of the defect." *Brown v. Racquet Club of Bricktown*, 471 A.2d 25, 30 (1984).

When analyzing constructive notice in slip and fall cases, courts have considered the characteristics of the substance that caused the fall and how long it was present. *See Schmicker v. Target*, No. CV 17-11628, 2020 WL 2487661, at *4 (D.N.J. May 13, 2020). "Although the evaluation of the constructive notice factors is normally a jury question, 'where the evidence adduced requires the jury to resort to "conjecture, guess or suspicion," the determination must be made by the Court.'" *Bowman v. Wal-Mart Stores E., LP*, No. 14-3182, 2015 WL 568570, at *5 (E.D. Pa. Feb. 10, 2015) (quoting *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011), *aff'd*, 501 F. App'x 131 (3d Cir. 2012)). As such, courts look for some evidence of how long the dangerous condition existed to determine whether the issue of constructive notice should go to a jury. For example, a reasonable factfinder could conclude that lettuce had been on the floor for several hours because it was wilted, discolored, and fragmented into small, irregular pieces – likely due to foot traffic. *Rumsey v. Great Atl. & Pac. Tea Co.*, 408 F.2d 89, 90-91 (3d Cir. 1969). And a customer's statement that she had notified the store of

cottage cheese on the floor one and a half hours before the plaintiff slipped and fell on it was sufficient to support a finding of constructive notice. *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 233, 236 (3d Cir. 1984).

By contrast, in *Schmicker v. Target*, summary judgment for the defendant was appropriate where "no eyewitness can indicate how long the clear liquid remained on the floor. Notably, Plaintiff herself did not see liquid on the floor prior to her fall, and has no knowledge of when or how the condition was created." 2020 WL 2487661, at *4. The court concluded that, "absent pure speculation, the record is devoid of any evidence as to how long the dangerous condition—the liquid substance on the floor—existed." *Id. See also Pace v. Wal-Mart Stores E., LP*, 799 F. App'x 127, 131 (3d Cir. 2020). Further, the Third Circuit has held that the presence of dust in a puddle of liquid did not prove how long the puddle existed before the accident, *Felix*, 501 F. App'x at 136, nor did the amount of liquid missing from a bottle or the size of the puddle, *Canton v. Kmart Corp.*, 470 F. App'x 79, 86 (3d Cir. 2012).

However, when a puddle of water formed from snow that melted and dripped from a flatbed cart, the plaintiff was entitled to an inference that the water had been present long enough for the snow to melt, and the issue of constructive notice should have been decided by a jury rather than on summary judgment. *Cortes v. BJ'S Wholesale Club*, No. 20-1098, 2021 WL 612387, at *1-2 (3d Cir. Feb. 17, 2021). In that case, the Third Circuit noted that the New Jersey Appellate Division "accepts that the condition of certain foreign substances can provide information as to how long those items have been in a particular location," and the cases relied upon by the District Court did not involve melting substances. *Id.*

## B. Mode of Operation Doctrine

Under New Jersey law, a plaintiff need not show actual or constructive knowledge where "a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Nisivoccia*, 818 A.2d at 316. Under such circumstances, the plaintiff is entitled to a presumption of negligence and the burden shifts to the defendant to demonstrate that it took reasonable and prudent steps to eliminate the hazard. *Id.* This "mode of operations" doctrine has been recognized in New Jersey's case law and model jury charges. *See, e.g., Prioleau v. Kentucky Fried Chicken, Inc.*, 122 A.3d 328 (N.J. Sup. Ct. 2015); *Nisivoccia*, 818 A.2d 314; *Wollerman v. Grand Union Stores, Inc.*, 221 A.2d 513 (N.J. Sup. Ct. 1966); *Bozza v. Vornado, Inc.*, 200 A.2d 777 (N.J. Sup. Ct. 1964); Model Jury Charges (Civil), § 5.20F-11 Duty Owed – Condition of Premises (2019).[3]

Courts have applied the mode of operation doctrine where a store's self-service business model created a foreseeable risk of harm which caused the plaintiff's injury. A self-service setting is one "in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other

---

[3] Model Jury Charge 5.20F describes the Mode of Operations Rule as follows:

> A proprietor of business premises that permits its customers to handle products and equipment in a self-service setting, unsupervised by employees, increases the risk that a dangerous condition will go undetected and that patrons will be injured. In self-service settings, patrons may also be at risk for injury from the manner in which the business's employees handle the business's products or equipment, or from the inherent quality of the merchandise itself.

Model Jury Charges (Civil), § 5.20F-11 Duty Owed – Condition of Premises (2019). If the jury finds that

> (1) the defendant's business was being operated as a self-service operation; (2) that the plaintiff's accident occurred in an area affected by the business's self-service operations; and (3) that there is a reasonable factual nexus between the defendant's self-service activity and the dangerous condition allegedly producing the plaintiff's injury, then the plaintiff is relieved of his/her burden of proving that the defendant had actual or constructive knowledge of the particular dangerous condition.

8

aspects of the facility that may present a risk." *Prioleau*, 122 A.3d at 338. The rule may apply regardless of whether a customer or employee created the dangerous condition and may depend on "the inherent qualities of the merchandise itself." *Id.*

For example, in *Nisivoccia*, the plaintiff slipped on loose grapes which were lying on the floor of the defendant's grocery store. 818 A.2d at 315. While it was unclear "how the grapes came to be on the floor or how long they had been there," they "were displayed in open-top, vented plastic bags that permitted spillage." *Id.* Even though the plaintiff's accident did not occur in the self-service produce section, the Supreme Court of New Jersey found that "[i]t was foreseeable then that loose grapes would fall to the ground near the checkout area, creating a dangerous condition for an unsuspecting customer walking in that area." *Id.* at 317-18. In reaching that conclusion, the Court emphasized the grapes' packaging, their propensity to roll, and the need for customers to handle the goods at checkout. *Id.* at 18.

Likewise, in *Wollerman*, the Court held it was foreseeable that a green bean would fall on the floor in the self-service produce section of a grocery store – whether due to the act of an employee or customer – and create a hazardous condition for shoppers. In finding that the mode of operation rule applied, the Court stated that an "operator's vigilance must be commensurate with th[e] risk" of injury that its "mode of operation is likely to generate." 221 A.2d at 514. Similarly, where a busy cafeteria did not provide lids or require the use of trays, it was foreseeable that liquid would spill on the floor from the self-service beverage machine and cause a patron to slip and fall. *Bozza*, 200 A.2d at 780-81. And when stores expect customers to remove items from shelves without assistance, injuries caused by customers' carelessness or handling of the merchandise have been linked to the self-service model. *See Duff v. Wal-Mart Stores E., LP*, No. CV 16-1095 (JBS/JS), 2017 WL 2633567, *3 (D.N.J. June 19, 2017) (plaintiff

9

tripped over fishing wire left on floor by another customer); *O'Shea v. K Mart Corp.*, 701 A.2d 475, 477-78 (N.J. Sup. Ct. App. Div. 1997) (heavy golf bag fell on plaintiff's face when she attempted to remove it from shelf).

The Supreme Court of New Jersey recently clarified that "the mode-of-operation rule is not a general rule of premises liability, but a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model." *Prioleau*, 122 A.3d at 338. The Court declined to apply the rule where the plaintiff slipped on greasy liquid while walking to the restroom at the defendant's restaurant, noting that

> nothing in the record suggests that when she fell, plaintiff was engaged in, or in contact with, any self-service activity, such as filling a beverage cup at a restaurant soda machine, selecting items from a condiment tray, or that patrons were carrying their drinks or food to the restroom area.

*Id.* at 331. As such, the key inquiry is "whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Id.* at 338. The fact that the floor was slippery – perhaps due to kitchen grease mixing with rainwater tracked inside by customers – bore no relationship to any self-service aspect of the defendant's business. *Id.* at 339.

Similarly, the mode of operations doctrine did not apply where a plaintiff slipped on a puddle of water near a self-service ice machine – which was known to leak during restocking – in the absence of evidence linking the puddle to that machine. *Goldsack v. Wal-Mart Stores, Inc.*, 800 F. App'x 95, 100 (3d Cir. 2020).

IV.

As an initial matter, Wal-Mart's proposition that the accident never occurred on its property is not compelling. Plaintiff and two witnesses gave similar testimony about the conduct and appearance of the man who identified himself as a manager and filled out a report on a clipboard after Plaintiff's fall. Although Wal-Mart claims to have no record of the incident, it has provided no evidence to counter that testimony.[4]

The next question is whether Plaintiff can establish that Defendant breached its duty of care as a business owner. Plaintiff argues the mode of operation doctrine applies because the water leak occurred in the self-service beverage aisle of Wal-Mart's store and, as such, she need not prove that Wal-Mart had actual or constructive notice of the water on the floor. (Opp. Br. 5-7, ECF No. 51). Defendant claims the mode of operation doctrine is inapplicable because there is no nexus between Plaintiff's injury and the self-service nature of the beverage aisle; and further, that the puddle of water was open and obvious. (Reply Br. at 2-4).

A. **Open and Obvious Hazard**

First, the Court finds that the water which caused Plaintiff's fall was not sufficiently open and obvious to eliminate Defendant's duty to warn. The cases upon which Defendant relies largely involve dangerous conditions that were clearly visible or known to the claimant at the time s/he was injured. *See Cunningham v. Briarwood Care & Rehab. Ctr., Inc.*, 2016 N.J. Super. Unpub. LEXIS 566 (N.J. Super. Ct. App. Div. Feb. 22, 2016) (plaintiff tripped over mattress which she knew was present); *Jimenez v. Applebee's Neighborhood Grill & Bar*, 2015 N.J. Super. Unpub. LEXIS 430 (N.J. Super. Ct. App. Div. Feb. 10, 2015) (plaintiff chose to place his face close to sizzling skillet of hot food); *Hackett v. Somerset Exec. Square*, 2014 N.J. Super.

---

[4] Although Wal-Mart did not produce an incident report which Plaintiff claims was filled out by the manager, there were no spoliation claims.

Unpub. LEXIS 678 (N.J. Super. Ct. App. Div. Jan. 23, 2014) (plaintiff hit his head on ceiling while performing HVAC repair work); *Andiorio v. Andiorio*, 2013 N.J. Super. Unpub. LEXIS 259 (N.J. Super. Ct. App. Div. Jan. 14, 2013) (plaintiff tripped over vacuum cleaner hose); *Robertson v. Cousins Wholesale Produce, Inc.*, 2010 N.J. Super. Unpub. LEXIS 1656 (N.J. Super. Ct. App. Div. June 15, 2010) (plaintiff chose to exit loading dock via ramp door with three-foot drop-off, of which he was aware).

Unlike the above cases, Plaintiff testified that she did not see or know about the water that she slipped on until after she fell. Indeed, the photographs in the record indicate that the water is hardly visible, if at all, against the coloring of the floor. A transparent liquid is dissimilar from the hazards in most of the cases cited by Defendant. Even if the puddle of water was several feet wide, it is not clear, based on the present record, that it was open and obvious such that Defendant had no duty to warn its customers.

### B. Mode of Operation Doctrine

Second, the Court finds that the mode of operation doctrine does not apply to this case. Although Plaintiff was directly engaged in a self-service activity when she was injured, unlike the claimants in *Prioleau* and *White v. 525 Meat Corp.* 2016 N.J. Super. Unpub. LEXIS 372 (N.J. Super. Ct. App. Div. Feb. 22, 2016), the case law discussed in Section II.B makes clear that there must be a relationship between an injury and the self-service model in order for the mode of operation doctrine to apply. Plaintiff's injury took place in a self-service aisle of Defendant's store, but she does not assert any evidence linking the water leak to the self-service model. When courts have applied the mode of operation doctrine, it was foreseeable that customers' or employees' handling of merchandise could lead to the type of injury that occurred. *See, e.g.*, *Duff*, 2017 WL 2633567; *Nisivoccia, Inc.*, 818 A.2d 314; *Wollerman v. Grand Union Stores*,

*Inc.*, 221 A.2d 513; *Bozza*, 200 A.2d 777; *O'Shea*, 701 A.2d 475. The fact that an injury occurred in a self-service aisle is not, without more, sufficient to invoke the doctrine.

Indeed, there are some predictable types of harm that could result from a self-service beverage aisle, such as injuries caused by customers lifting heavy cases of packaged water or tripping over bottles dropped by other customers. However, there is no evidence that a plastic water bottle is likely to break or leak when handled by customers or stacked in cases. Unlike a heavy item that is likely to fall when removed from the shelf, or fruits that are likely to spill from open containers, bottled water is not inherently prone to leaking absent unusual circumstances. *See Nisivoccia*, 818 A.2d 314; *Wollerman*, 221 A.2d 513; *O'Shea v. K Mart Corp.*, 701 A.2d 475. A leak could occur in any container of liquid in a store, due to a manufacturing defect or other reasons unrelated to self-service. Plaintiff argues the stacked cases of bottled water were inherently dangerous due to "the pressure from stacking the bottles applied to the packaging, and the leaking nature of water"; however, she cites no authority or expert evidence to support that proposition. (*See* Opp. Br. at 7-8; *see also* Pl.'s Sur-Reply 4, ECF No. 57).

Because Plaintiff's injury was not a foreseeable consequence of the self-service model, she has not demonstrated that the mode of operation doctrine should apply; therefore, she must show Defendant had actual or constructive knowledge of the leak in order to defeat summary judgment.

### C. Constructive Notice

There is no evidence to suggest that Defendant had actual notice of the dangerous condition in this case. Thus, the next question is whether Defendant had constructive notice of the leak – that is, whether it had a reasonable opportunity to discover and either eliminate or warn of the hazard. Plaintiff argues the answer to that question is yes, based on the amount of

water on the floor and the time that passed before someone came to Plaintiff's aid after she fell (five to ten minutes).

In most slip and fall cases there is a question of fact about whether defendant had reasonable notice of the dangerous condition. In this case, no evidence has been shown. More specifically, in applying the principles discussed in Section III.A, Plaintiff has not alleged sufficient facts to create a genuine dispute regarding constructive notice. In order for this issue to be decided by a jury, there must be some evidence to allow a factfinder to conclude that the water was on the floor for an unreasonable period of time before the accident occurred. Plaintiff has proffered no evidence of how long the puddle existed prior to the fall, or that that length of time would be sufficient to show Wal-Mart had constructive notice of the dangerous condition. For example, she has not presented maintenance logs, store policies, or video surveillance that suggests Wal-Mart should have known about the water spill before her fall. Nor has she retained an expert who could extrapolate the rate at which water was leaking out of the bottle. Further, there are no peculiar aspects of the liquid that could indicate how long it was on the floor. *See Cortes*, 2021 WL 612387; *Rumsey*, 408 F.2d 89. The Third Circuit has held that neither the size of a puddle of liquid nor the amount of liquid missing from a bottle indicates how long a spill existed. *Canton*, 470 F. App'x at 86. Holding Wal-Mart liable without any facts that speak to constructive notice would essentially impose strict liability for all slip and fall accidents on its premises.

Overall, "because we require more than mere speculation to establish constructive notice," *Felix*, 501 F. App'x at 136, Plaintiff has not met her burden to show that Defendant breached its duty of care by not discovering the water leak before she slipped and fell. As such,

14

she has not established a prima facie case of negligence, and the Court will grant Defendant's motion.

## ORDER

**THIS MATTER** having come before the Court on a motion for summary judgment filed by Wal-Mart Stores Inc. (ECF No. 50); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this 5th day of May 2021,

**ORDERED** that Defendants' motion for summary judgment is **GRANTED** and Plaintiff's complaint is **DISMISSED** with prejudice.

The Clerk is directed to close the file.

*/s/ Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.